UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

SILO TECHNOLOGIES, INC.,

    Plaintiff,

    v.

MEX TRADING, LLC, AGUSTIN CALCANEO,

    Defendants.

Case No. 2:23-cv-22499

**OPINION**

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff Silo Technologies, Inc. initiated this action against Mex Trading, LLC ("MTLLC") and Agustin Calcaneo (collectively, "Defendants") on November 20, 2023. Silo filed the instant motion for default judgment pursuant to Rule 55(b)(2), ECF No. 25 (the "Motion"), on December 20, 2024. The Court decides the matter without oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, Plaintiff's motion for default judgment is **GRANTED**.

**I.    BACKGROUND**

Plaintiff's Complaint alleges the following facts:

MTLLC participated in a financing arrangement created by Plaintiff, the terms of which are described Plaintiff's Credit Line Agreement. Compl. ¶ 6 & Ex. 1. The program provided a framework pursuant to which MTLLC could sell its accounts receivable to Plaintiff at a discount in exchange for prompt payment and increased liquidity. *See* Compl. Ex. 1, preamble. MTLLC would submit invoices to Plaintiff, and Plaintiff had the ability to offer to purchase MTTLC's according to the terms of the Credit Line Agreement. Compl. ¶¶ 16-18. When Plaintiff purchased the right to receive payments under the invoices, MTLLC was required to direct its customers to make their payments on the invoices to a designated account accessible to Plaintiff. Compl. ¶ 23. Plaintiff also received a security interest in some of Plaintiff's property, including its accounts receivable. Compl. ¶ 15 & Ex. 2 ¶ 17, Ex. 3. Plaintiff perfected its security interest by filing a UCC financing statement dated February 28, 2023. Compl. Ex. 3.

On January 6, 2023, Plaintiff and Defendant Calcaneo (acting on behalf of MTLLC) signed an Instant Pay Order Form that incorporated the terms of the Credit Line Agreement. Compl. Ex. 2. The Instant Pay Order Form included additional terms concerning fees and payment arrangements for instant pay fundings made under the Credit Line Agreement. *See id.*

Plaintiff alleges that it provided MTLLC with Instant Pay funds pursuant to the Instant Pay Order Form and the Credit Line Agreement in the amount of $78,850.39. Compl. Ex. 4. Plaintiff alleges that, "[o]n information and belief, MTLLC has wrongfully diverted payment on the Purchased Receivable[s] related to this action from the Silo Payment Account to another account to which Plaintiff has no access or otherwise has directed that the funds be paid directly to MTLLC. These actions are the result of Calcaneo's conduct." Compl. ¶ 30. Plaintiff alleges that this failure to pay and/or obstruction of payment constitutes breach of the agreements. Compl. ¶¶ 32-33. It also alleges that "based on contact with many of the customers involved in the Purchased Accounts, that MTLLC has received payment on the Purchased Receivables, which is the sole property of Plaintiff, without Plaintiff's permission and has kept Plaintiff from accessing payment on the Purchased Receivables." Compl. ¶ 34. Together with "late fees, interest accrual, offsets, payments and credits" as of "October 18, 2023", "the amount due and owing by MTLLC to Plaintiff" was $108,576.03. Compl. ¶ 28.

On November 20, 2023, Plaintiff Silo Technologies, Inc. filed a four-count complaint against Defendants, alleging (1) breach of contract by MTLLC, (2) conversion by both MTLLC and Calcaneo, (3) fraud by both MTLLC and Calcaneo, and (4) "breach of constructive trust" by both MTLLC and Calcaneo. Defendants never answered or otherwise responded to Plaintiff's complaint. Both Defendants were placed in default on September 17, 2024. ECF No. 23. Plaintiff filed its motion for default judgment on December 20, 2024. ECF No. 24. Defendants did not respond.

## II. DISCUSSION

Fed. R. Civ. P. 55(b) "authorizes courts to enter a default judgment against a properly served defendant who fails to file a timely responsive pleading." *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008). Before the Court grants a motion for default judgment, however, it must ensure, *inter alia*, (1) that personal jurisdiction exists over the Defendants and (2) "that entry of default under Rule 55(a) was appropriate." *Gov't Emples. Ins. Co. v. Pennsauken Spine & Rehab P.C.*, 2018 WL 3727369, at *2 (D.N.J. Aug. 6, 2018). "[T]he entry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)).

Once a party has defaulted, the "consequence of the entry of a default judgment is that 'the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.' " *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (citing 10 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure, § 2688 at 444 (2d ed. 1983)). An entry of default judgment requires that the Court determine whether a sufficient cause of action has been stated "since a party in default does not admit mere conclusions of law." *Chanel, Inc. v. Gordashevsky*, 558 F.Supp.2d 532, 535 (D.N.J. 2008). After a cause of action has been established, district courts must then determine whether the entry of default judgment would be proper by considering: (1) whether the party subject to default has a meritorious defense, (2) whether there is prejudice to the plaintiff if default judgment is denied, and (3) whether the default was due to the defendant's culpable conduct. *See Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000); *Hritz*, 732 F.2d at 1181.

### A. Jurisdiction and Service

This Court has subject matter jurisdiction over this case because the parties are completely diverse and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332. Plaintiff is a Delaware corporation with a principal place of business in California; Defendant MTLLC is a New Jersey corporation with a principal place of business in New Jersey; Defendant Calcaneo is an individual domiciled in Bergen County, New Jersey. Compl. ¶¶ 1-3 (ECF No. 1). The Court has general personal jurisdiction over both Defendants because each is a New Jersey resident.

Defendants were both properly served. On August 12, 2024, after finding that Plaintiff had "demonstrate[d] a good faith, energetic effort to locate and serve Defendant MTLLC and its registered agent Defendant Agustin Calcaneo," Magistrate Judge Jose R. Almonte granted Plaintiff's motion for substituted service of the Summons and Complaint, permitting Plaintiff to serve the Defendants "to Defendants' Registered Business Address and PO Box Address shall be completed pursuant to New Jersey Court Rule 4:4-4(b) within thirty (30) days from the date of this order." ECF No. 20. On August 16, 2024, Plaintiff filed an Affidavit of Service from Ms. Meredith Berrios confirming service consistent with the Court's Order. ECF No. 22.

### B. Causes of Action[1]

---

[1] The Credit Line Agreement selects for the application of California law. Compl. Ex. 1 ¶ 24, ECF No. 1-1. This Court has jurisdiction based on the diversity of the parties, *see* Compl. ¶ 4, ECF No. 1, so the Court applies New Jersey state choice of law rules to determine which state's substantive law governs, *Fin Associates LP v. Hudson Specialty Insurance Company*, 741 Fed. Appx. 85, 87 (3d Cir. 2018). "Ordinarily, when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice if it does not violate New Jersey's public policy." *Instructional Systems, Inc. v. Computer Curriculum Corp.*, 614 A.2d 124, 133 (N.J. 1992). California has a substantial relationship to the transaction because Plaintiff's principal place of business is in

The Court turns next to whether Plaintiff is entitled to relief on the causes of action it alleges. The Court notes, as an initial matter, that Plaintiff's complaint seeks the return of the same funds under each of its causes of action; in other words, were Plaintiff to succeed on all of its claims, it would still be entitled to no more relief than if it succeeded on only one of its claims. In the interest of judicial economy, because the Court finds that Plaintiff is entitled to recover against MTLLC for breach of contract and against Defendant Calcaneo for conversion, it does not address Plaintiff's claims for fraud.

### 1. *Breach of Contract against MTLLC*

Plaintiff's first claim is for breach of contract against Defendant MTLLC. To succeed on a claim for breach of contract under California law, a plaintiff must establish: "(1) a contract between the parties, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *D'Arrigo Bros. of California v. United Farmworkers of America*, 169 Cal. Rptr. 3d 171, 178 (2014). Plaintiff's well-pled factual allegations favor entering default judgment against MTLLC for breach of contract. Plaintiff alleged the existence of a contract— namely, that it purchased accounts receivable from MTLCC pursuant to the terms of the Instant Pay Order Form between MTLLC and Plaintiff and the incorporated Credit Line Agreement. Compl. ¶ 6. Plaintiff alleged that it performed its obligations under the agreement. Compl. ¶¶ 16-19. Plaintiff alleged that Defendants breached the agreement by claiming that MTLLC "failed to pay, caused the debtor with respect to the Purchased Receivable to divert payment to MTLLC, interfered with Plaintiff's ability to collect on a Purchased Receivable, directed the debtor under a Purchased Receivable to make payment directly to MTLLC or to an account other than the Silo's Payment Account." Compl. ¶ 33. And Plaintiff's damages are adequately pled as reflected in its Complaint and exhibits thereto. *See, e.g.*, Compl. Ex. 4 (calculating MTLLC's outstanding balance owing to Plaintiff), ECF No. 1-1.

### 2. *Piercing the Corporate Veil to Reach Calcaneo*

Plaintiff also brings three claims against Defendant Agustin Calcaneo (in addition to MTLLC) for conversion, fraud, and "breach of constructive trust". *See* Compl., ECF Nos. 40-63. None of Plaintiff's allegations suggest that Calcaneo took actions with respect to Plaintiff other than in his position as the manager and sole member of MTLLC, and ordinarily debts or obligations arising out of the actions of an LLC do not become the debt or obligations of its members or managers. *See* N.J.S.A. 42:2C-30. To find Defendant Calcaneo liable personally, the Court would need to pierce the corporate veil. *See Balanced*

---

California. *See id.* There being no evident New Jersey public policy to the contrary, the Court will enforce the choice of law provision and apply California substantive law, except that New Jersey law will govern the "liability of a member as member and a manager as manager for the debts, obligations, or other liabilities" of the New Jersey LLC. *See* N.J.S.A. 42:2C-6.

*Bridge Funding LLC v. Mitnick Law Office, LLC*, 2022 WL 3593892 (D.N.J. Aug. 23, 2022) (explaining application of veil-piercing in context of New Jersey LLC). "[T]he party seeking an exception to the fundamental principle that a corporation is a separate entity from its principal bears the burden of proving that the court should disregard the corporate entity." *Tung v. Briant Park Homes, Inc.*, 670 A.2d 1092, 1096 (N.J. App. Div. 1996).

To pierce the veil in New Jersey a plaintiff must demonstrate (1) "such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist" and (2) that "adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *North American Steel Connection, Inc. v. Watson Metal Prods. Corp.*, 515 Fed. Appx. 176, 179 (3d Cir. 2013) (internal quotations and citations omitted). "[A]t the default judgment stage 'the determination of alter ego liability ... depends only on the allegations in the pleadings and does not require any fact findings at all." *Gerber v. A&L Plastics Corp.*, 2021 WL 3616179, at *5 (D.N.J. Aug. 16, 2021) (quoting *Doctor's Assoc. Inc. v. Singh-Loodu*, 2014 WL 4988389, at *3 (D.N.J. Oct. 6, 2014)).

Though Plaintiff's complaint doesn't expressly acknowledge that it seeks to pierce the corporate veil, the allegations contained therein are sufficient to permit the Court to pierce the corporate veil for the purpose of default judgment. Plaintiff alleged unity of interest and ownership by alleging that "Calcaneo was the owner, sole member, officer, director, and manager of the business and financial affairs of MTLLC" and that "[i]n all dealings, business and financial, Plaintiff dealt with Calcaneo." Complt. ¶¶ 9, 11. Plaintiffs satisfy the second prong of the piercing analysis by alleging, *inter alia*, that "Calcaneo caused MTLLC, by fraud, and other devices, to steal, convert, and misuse the Accounts Receivable at issue in this action in violation of Plaintiff's rights." Compl. ¶ 58.

### 3. Conversion under California Law

"Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." *Lee v. Hanley*, 354 P.3d 334 (Cal. 2015) (cleaned up). Plaintiff has demonstrated its right to the possession of Purchased Receivables under the contract. It has alleged that Defendant Calcaneo (acting on behalf of MTLLC) has wrongfully detained the sums owing on the Purchased Receivables in interference with Plaintiff's property rights and purposefully directed these sums to be paid to MTLLC accounts not accessible to Plaintiff. Compl. ¶¶ 30-33. And it has alleged damages. *See* Compl. ¶ 28 (enumerating damages). Plaintiff is entitled to recover against MTLLC and Calcaneo for conversion.

**C. Whether Entry of Default Judgment Would Be Proper**

Defendants have no meritorious defense based on the limited record before the Court. *See e.g., Teamsters Pension Fund of Philadelphia & Vicinity v. Am. Helper, Inc.*, 2011 WL 4729023 at *4 (D.N.J. Oct. 5, 2011) (finding no meritorious defense where court could not determine its existence since defendant did not respond). Defendants were properly served on August 16, 2024 and failed to appear, defend, or otherwise respond to the Complaint. *See* Berrios Decl., ECF No. 22. "Plaintiff will suffer prejudice if the Court does not enter default judgment as Plaintiff has no other means of seeking damages for the harm caused by Defendant[s]." *Gowan v. Cont'l Airlines, Inc.*, 2012 WL 2838924, at *2 (D.N.J. Jul. 9, 2012).

Similarly, absent any evidence to the contrary, "the Defendant's failure to answer evinces the Defendant's culpability in default." *Teamsters Pension Fund of Philadelphia*, 2011 WL 4729023 at *4. In this case, there is nothing before the Court to show that Defendants' failure to respond was not willfully negligent. *See id.* (citing *Prudential Ins. Co. of America v. Taylor*, 2009 WL 536403 at *1 (D.N.J. Feb. 27, 2009)) (finding that when there is no evidence that the defendant's failure to answer the complaint was due to something other than its own willful negligence, the defendant's conduct is culpable and default judgment is warranted). Accordingly, the Court will enter default judgment against Defendants as to liability.

### D. Relief[2]

In considering a motion for default judgment, the Court accepts as true the well-pleaded allegations of the complaint, but conducts its own inquiry as to damages. *See Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir.1990) (citing 10 Wright, et al., Federal Practice & Procedure § 2688 (2d ed.1983)); *Int'l Assoc. of Heat & Frost Insulators v. S. Jersey Insulation Servs.*, No. 05–cv–3143, 2007 WL 276137, at *1 (D.N.J. Jan. 26, 2007).

Plaintiff is entitled to receive its requested damages—comprised of the value of the funds owing to Plaintiff under the contract together with late fees as described by the contract—totaling $108,576.03. Compl. ¶ 28. Plaintiff indicates that this amount includes "interest accrual" up to October 18, 2023, and that interest "continue[d] to accrue on this amount" at the time of the Complaint. Accordingly, Plaintiff seeks pre-judgment interest accruing after this date. California law entitles Plaintiff to prejudgment interest "at a rate of 10 percent per annum after the breach." Cal. Civ. Code § 3289(b). Based on the allegations in the Complaint, that interest rate is properly applied to the amount of $108,576.03 beginning on October 18, 2023 through the date of this Order. Compl. ¶ 28.

---

[2] The Court declines to employ the equitable remedy of constructive trust because the imposition of such a trust over an amount of money coextensive with the damages to which Plaintiff is entitled pursuant to this Opinion would be duplicative.

Plaintiffs seek attorney fees and expenses totaling $27,446.65. "[S]tate rules concerning the award of attorneys' fees are to be applied in diversity cases." *Montgomery Ward & Co. v. Pac. Indem. Co.*, 557 F.2d 51, 56 (3d Cir. 1977). "California law is clear that 'the measure and mode of compensation of attorneys and counselors at law is left to the agreement.'" *Silicon Valley Bank v. Saggi*, 2021 WL 2525740 (D.N.J. June 21, 2021) (citing Cal. Civ. Proc. Code § 1021); *see also Havasu Condo's Ltd. v. Sec. Pac. Corp.*, 5 F.3d 536 (9th Cir. 1993) ("California law recognizes the enforceability of contractual attorneys' fees provisions."). The Credit Line Agreement provides that, in the event that Plaintiff is unable to recover from MTLCC, MTLCC is "responsible for all costs or expenses that [Plaintiff] incur[s] in the process of collecting amounts owed but not timely paid, including legal or collections fees." Credit Line Agreement § 6. Upon review of the Declaration of Kimbrilee M. Weber, Esq. in Support of Plaintiff's Motion for Default Judgment Against Defendants, which describes the services performed by Plaintiffs' counsel and legal staff in support of this litigation, the Court agrees that the requested fees and expenses are reasonable and appropriate.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's motion for default judgment is **GRANTED**. An appropriate Order follows.

**DATE:** February 18, 2024

WILLIAM J. MARTINI, U.S.D.J.